# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,**<br><br>    Plaintiff,<br><br>v.<br><br>**Rannie Johnson,**<br><br>    Defendant. | **Criminal No. 06-392 (JRT-JJG)**<br><br>**REPORT<br>AND<br>RECOMMENDATION** |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came before the undersigned on February 13, 2007, for resolution of pretrial motions. Andrew R. Winter, Assistant United States Attorney, appeared on behalf of the Government. Albert A. Garcia, Jr., Esq., appeared on behalf of defendant Rannie Johnson.

Through a motion to suppress evidence from a search and seizure (Doc. No. 14), Mr. Johnson challenges an investigatory stop of his vehicle. Mr. Johnson also challenges the ensuing warrantless entry of his residence. Through a motion to suppress statements (Doc. No. 13), Mr. Johnson argues that officers took a statement in violation of his privilege against self-incrimination. He separately brings a motion to suppress evidence (Doc. No. 54) that reiterates these arguments.

Mr. Johnson also brings two motions to dismiss for violations of due process. One claims that he was the object of selective prosecution by the Government (Doc. No. 49). The other asserts that he was subjected to outrageous government conduct (Doc. No. 53).

These motions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c). Mr. Johnson represents that there are no issues about his remaining

suppression motions (Doc. Nos. 34, 48, 58), which are therefore withdrawn. Nondispositive motions are addressed in a separate order.

I.     BACKGROUND

Sergeant Kelly O'Rourke, of the Minneapolis Police Department, was the supervising case agent in an investigation of Mr. Johnson (Johnson). In November 2006, O'Rourke received a tip from an informant, whose previous tips had been reliable and had led to narcotics convictions. The informant disclosed that a person was dealing large amounts of cocaine, adding that the dealer drove a Chevrolet Tahoe and suppling a license plate number. The Tahoe was registered to Johnson at an address in north Minneapolis.

O'Rourke set up surveillance of Johnson that continued for several days. Officers determined that Johnson was living at the north Minneapolis address. They observed Johnson driving the Tahoe to another house that is purportedly a "known crack house." Because Johnson often made brief stops there, O'Rourke believed that the actions of Johnson were consistent with drug trafficking. While the surveillance was ongoing, O'Rourke received another tip from the informant, who again stated that Johnson was dealing large amounts of cocaine.

Within seventy-two hours of the latter tip, on November 9, 2006, officers watched Johnson leave his residence and drive the Tahoe to a convenience store. When he arrived, another person entered the Tahoe. Johnson then drove around the block and dropped the person off at the same convenience store. None of the officers observed what happened inside the Tahoe. O'Rourke did not witness the incident, but he believes that this incident was consistent with the sale of illegal drugs. The record does not identify the officers who observed the incident.

Johnson then drove the Tahoe through other areas in north Minneapolis. O'Rourke initially claimed that he was watching Johnson drive the Tahoe, but then conceded that he learned about it through radio reports from officers taking part in the surveillance operation. According to these officers, Johnson randomly circled several blocks, backed into an alley, and proceeded in the opposite direction. The record again does not identify the officers who observed this behavior, nor is there any consistent account of what occurred.

On receiving the officers' reports, O'Rourke believed Johnson was "cleaning off," meaning that Johnson was attempting to identify and evade surveillance. O'Rourke ordered two officers in a marked squad to stop the Tahoe and to detain Johnson. The officers moved Johnson to the back of their squad at this point.

O'Rourke approached Johnson and asked him if he knew why he had been detained. Johnson replied that it was for non-payment of child support. O'Rourke then asked whether Johnson had any contraband in the Tahoe, and Johnson suggested that he look. Rather than immediately doing so, O'Rourke responded, "I will look, are you sure?" and Johnson assented.

O'Rourke then walked to the Tahoe and looked through the driver's-side window. He saw a plastic bag tucked under the driver's seat. O'Rourke leaned forward and smelled an ammonia-like scent that he associated with cocaine. He also saw clear plastic bags packed with a white substance. O'Rourke walked back to the squad and told Johnson that he was under arrest. Johnson allegedly answered, "Why, none of that stuff's mine," or "What for, that's not my shit."

After Johnson was transported to the stationhouse, O'Rourke questioned him, about thirty minutes after the Tahoe was stopped. He asked Johnson to verify the location of his residence, and then asked

Johnson to list the occupants of the residence. O'Rourke explained that this questioning was to ensure officers' safety when they executed a search warrant at Johnson's residence. Johnson allegedly said that, at the time he was pulled over, he was speaking with his spouse on the telephone, and that she knew officers may be coming to their residence.

Upon learning this news, O'Rourke was concerned that Johnson's spouse would attempt to destroy contraband at the residence. He contacted other officers and directed them to "freeze" the residence, meaning that they enter the residence and secure the occupants. This order was carried out within five to ten minutes. Officers went to Johnson's residence and used a ram to force entry. They conducted a protective sweep of the entire residence and detained its two occupants, an adult and a child. They also found, in plain view, suspected illegal drugs.

Another officer obtained a search warrant for Johnson's residence approximately three hours later. The residence was then searched and incriminating items, including bags suspected to contain cocaine, were recovered.

## II. ANALYSIS

### A. Vehicular Stop

Johnson first challenges his seizure during the vehicular stop. He argues that the officers lacked reasonable, articulable suspicion to carry out an investigatory stop. The Government counters that reasonable, articulable suspicion was present and, when the officers saw illegal drugs in plain view inside the Tahoe, it was proper to seize it. In the alternative, the Government contends that the officers had probable cause to arrest Johnson, and moreover, they had probable cause to conduct a warrantless search of his vehicle.

Consistent with the Fourth Amendment, an officer may not arrest a person without a warrant unless that officer has probable cause to do so. Probable cause exists where, according to the facts and circumstances known to law enforcement at the time of arrest, a prudent person would believe that a suspect had committed or is committing a crime. *United States v. Adams*, 346 F.3d 1165, 1169 (8th Cir. 2003).

In circumstances where probable cause is founded on a tip by an informant, the key concern is whether the informant is reliable. Where officers lack information about the reliability of an informer, probable cause may be provided by facts that corroborate the tip. Officers may corroborate the tip through surveillance of the suspect. *United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995).

Where a reliable informant stated that a drug dealer was working out of a particular vehicle, officers observe that vehicle used a manner consistent with illegal drug sales, and the driver matches the description given by the informant, officers had probable cause to arrest the driver. *United States v. Quarles*, 955 F.2d 498, 501 (8th Cir. 1992); *cf. United States v. Rich*, 795 F.2d 680, 682 (8th Cir. 1986) (upholding arrest where informant reported seeing contraband at defendant's residence, and officers then observed defendant handling suspicious parcels at hotel).

Here, officers received a tip from an informant whose prior tips had led to drug trafficking convictions. The informant accurately described Johnson's vehicle. Officers then engaged in several days' surveillance, in which they observed Johnson make several trips to a known crack house. In these circumstances, a prudent person would have believed that Johnson was engaged in illegal drug trafficking. For this reason, officers had probable cause to arrest him, which provides justification for the stop of his vehicle.

The Government also invokes the automobile exception. This doctrine permits officers to search a vehicle, without first obtaining a warrant, where they have probable cause to believe that the vehicle is used to transport contraband. *United States v. Donnelly*, 475 F.3d 946, 954-55 (8th Cir. 2007).

This issue is different from the analysis of probable cause to arrest, as it does not focus on criminal activity by a person, but on the use of a vehicle as an instrumentality of crime. But this distinction does not affect the outcome here. There was also reason to believe that Johnson used the Tahoe to transport illegal drugs. The automobile exception, therefore, provides a suitable reason for officers to search Johnson's vehicle.

Because the vehicular stop is justified pursuant to an arrest with probable cause, and because the subsequent search of the vehicle is authorized under the automobile exception, this Court need not examine whether there was an investigatory stop based on reasonable, articulable suspicion. *See United States v. Carpenter*, 462 F.3d 981, 986 (8th Cir. 2006).

### B.     Statements

Johnson challenges the statements that he made to O'Rourke at the scene of the stop, after contraband was found in his vehicle. He contends that these statements were taken in violation of his privilege against self-incrimination.

This Fifth Amendment privilege requires that a suspect, once taken into police custody, shall receive a *Miranda* warning before being subject to police interrogation. *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005). The parties here have not contested that, when Johnson made his statements, he was in custody and had not received a *Miranda* warning. So the issue is whether there was interrogation.

Police actions constitute interrogation when an officer engages in express questioning or its functional equivalent. This standard includes words or actions by police, other than those normally incident to custody, that police know are likely to result in an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). The only police conduct at issue here is when O'Rourke told Johnson he was under arrest. This statement is plainly incident to custody.

The alleged responses by Johnson, therefore, were spontaneous utterances that do not qualify for the privilege against self-incrimination. They need not be suppressed due to violation of this privilege. *See United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005).

### C. Search of Residence

Johnson also asserts that officers illegally entered and searched his residence. He primarily challenges the initial warrantless entry, which the Government contends was justified by exigent circumstances. The Government argues in the alternative that, even if the initial entry was improper, officers had a good faith basis to execute a search warrant on the premises. Although the parties have not raised arguments regarding the sufficiency of the search warrant itself, this issue merits independent discussion.

#### 1. Exigent Circumstances

The Fourth Amendment ordinarily requires officers to obtain a search warrant before entering a residence, subject to limited exceptions. One exception is exigent circumstances, which allows officers to enter a residence where lives are threatened, escape of a felony suspect is imminent, or evidence is about to be destroyed. *United States v. Amburn*, 412 F.3d 909, 915 (8th Cir. 2005).

To determine whether exigent circumstances justify entry, a court makes an objective inquiry, focusing on what a reasonable, experienced police officer would believe. *United States v. Schmidt*, 403

F.3d 1009, 1013 (8th Cir. 2005). Where the destruction of evidence is concerned, the issue is whether there is a risk of destruction before officers can properly obtain a warrant. *United States v. Leveringston*, 397 F.3d 1112, 1116 (8th Cir. 2005). Exigent circumstances may persist even though there is delay between the time that a risk of destruction arises and officers' entry into a residence.

The record shows that, before he was stopped, Johnson was communicating with his spouse. But the record lacks any implication that Johnson's spouse was involved in drug trafficking or that she would engage in the destruction of evidence. So this communication, by itself, is not sufficient to support the officers' belief that evidence was about to be destroyed. For this reason, the ensuing entry into his residence was not justified by exigent circumstances.

**2.     Search Warrant**

Though the parties do not squarely present the question, an intervening issue is the adequacy of the search warrant. For a search warrant to comport with the Fourth Amendment, a detached and neutral magistrate must find that it is supported by probable cause. *Warden v. Hayden*, 387 U.S. 294, 301-02 (1967).

Probable cause exists if a reasonable person would find a fair probability that incriminating evidence is on the premises to be searched. *Illinois v. Gates*, 642 U.S. 213, 238 (1983). This inquiry requires a practical, common-sense evaluation of all the relevant facts and circumstances. *United States v. Durham*, 470 F.3d 727, 733 (8th Cir. 2006). But a court may only consider the facts and circumstances alleged in the affidavit accompanying the search warrant. *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003).

Where certain allegations in the affidavit are the fruits of evidence that has been suppressed, those allegations may not be used to support probable cause. But if other allegations in the affidavit are not tainted by police misconduct, and these allegations supply probable cause, the search warrant accords with the Fourth Amendment. *United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004).

The affidavit supporting the search warrant in this matter includes some allegations that flow from the initial warrantless entry of Johnson's residence, noting that officers found contraband in plain view.

When these allegations are set aside, the rest of the affidavit states that officers received a tip from a reliable informant, who stated that Johnson was dealing drugs. The informant added that Johnson was transporting drugs in a vehicle, giving the license plate number for the Tahoe, and that he had recently seen drugs inside Johnson's residence. Officers conducted surveillance and observed Johnson engaging in unusual driving behavior consistent with drug dealing. And when they arrested him, as described above, they found illegal drugs in his vehicle.

Because these allegations support a reasonable belief that incriminating evidence would be found at Johnson's residence, the search warrant was supported by probable cause. *See, e.g., United States v. Roberson*, 439 F.3d 934, 939 (8th Cir. 2006); *United States v. Vinson*, 414 F.3d 924, 930 (8th Cir. 2005). The evidence obtained from the ensuing search, therefore, need not be suppressed. Since the search warrant is supported by probable cause, it is not necessary to inquire into whether officers had a good faith basis to execute the search warrant.

Where officers acquire evidence illegally, but they also have a separately founded and legal cause to obtain that evidence, suppression is not required. *United States v. Reinholz*, 245 F.3d 765, 779 (8th Cir. 2001). Though the original warrantless entry into Johnson's residence was not justified by exigent

9

circumstances, officers then procured a warrant and acquired a lawful right to evidence there. For this reason, evidence from the original improper entry also need not be suppressed.

### D. Due Process Violations

Johnson also seeks dismissal of the charges against him, arguing that his prosecution violates due process. He argues that the Government is engaged in selective prosecution against him, or in the alternative, that he has been the object of outrageous governmental conduct.

To establish a prima facie case of selective prosecution, a defendant must show that (1) he or she was singled out for prosecution, while others similarly situated were not prosecuted, and (2) the decision to prosecute was based on an impermissible factor such as race, religion, or efforts to procure constitutional rights. *United States v. Huber*, 404 F.3d 1047, 1054-55 (8th Cir. 2005).

Johnson suggests that the decision to prosecute him was based on his prior convictions for drug offenses. This factor is arguably a legitimate reason to proceed with prosecution. *Cf. United States v. Rhines*, 143 Fed.Appx. 478, 481 (3d Cir. 2005) (noting prior felony convictions supplied non-discriminatory motive for prosecution). Even if this rationale were suspect, Johnson has not shown that others similarly situated were not prosecuted. Because he has not shown a prima facie case of selective prosecution, it is not appropriate to dismiss for this reason.

To demonstrate outrageous governmental conduct, a defendant has the burden to show that law enforcement engaged in such outrageous conduct that it shocks the conscience. *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003). Johnson suggests, without any support in the record, that law enforcement procured an informant by promising leniency in criminal proceedings against that informant. Even if the record supported these allegations, it does not shock the conscience or violate due process.

*See United States v. Nguyen*, 250 F.3d 643, 646 (8th Cir. 2001). So this argument for dismissal also fails.

## III. CONCLUSION

Because officers had probable cause to arrest Johnson, and because they also had probable cause to believe that his vehicle was used to transport contraband, evidence flowing from the stop of his vehicle need not be suppressed. The statements Johnson made following the stop were not in response to interrogation and thus did not violate his privilege against self-incrimination. And the search warrant for his residence is supported by probable cause, which means evidence from there, including that found in the previous exigent entry, need not be suppressed. This Court concludes, therefore, that Johnson's motions to suppress should be denied. Because he has not established any violations of due process, this Court further concludes that his motions to dismiss should also be denied.

## IV. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Johnson's motion to suppress statements (Doc. No. 13) be **DENIED.**

2. Johnson's motion to suppress evidence from a search and seizure (Doc. No. 14) be **DENIED.**

3. Johnson's motion to suppress evidence (Doc. No. 54) be **DENIED.**

4. Johnson's motion to dismiss for selective prosecution (Doc. No. 49) be **DENIED.**

5. Johnson's motion to dismiss for outrageous governmental conduct (Doc. No. 53) be **DENIED.**

6.      All other dispositive motions (Doc. Nos. 34, 48, 58) are **WITHDRAWN.**

Dated this 16th day of March, 2007.                    s/Jeanne J. Graham

                                                          JEANNE J. GRAHAM
                                                          United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by April 4, 2007. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.