UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RANNIE JOHNSON,<br><br>Defendant. | Criminal No. 06-392 (JRT/JJG)<br><br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

Andrew R. Winter, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Albert A. Garcia, Jr., **GARCIA & ASSOCIATES, P.A.**, 401 Second Avenue South, Suite 632, Minneapolis, MN 55401, for defendant.

Defendant Rannie Johnson was charged with one count of possession with intent to distribute 50 grams or more of crack cocaine. Defendant filed a Motion to Dismiss and Motions to Suppress Evidence. In a Report and Recommendation dated March 16, 2007, United States Magistrate Judge Jeanne J. Graham recommended that this Court deny defendant's motions. The defendant has objected to the Report and Recommendation.[1] The Court has conducted a *de novo* review of the objections pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b). For the reasons discussed below,

---

[1] Defendant did not object to the Magistrate Judge's recommendation that defendant's motion to suppress statements [Docket No. 13] and motion to dismiss for selective prosecution [Docket No. 49] be denied. The Court therefore adopts the Magistrate Judge's recommendation without discussion and denies these motions.

the Court adopts the Report and Recommendation of the Magistrate Judge and denies defendant's motions to dismiss and to suppress.

## BACKGROUND[2]

In November 2006, Minneapolis Police Sergeant Kelly O'Rourke ("O'Rourke") received a tip from an informant that a person was dealing large amounts of cocaine in north Minneapolis. The informant stated that the dealer drove a Chevrolet Tahoe, and provided O'Rourke with the Tahoe's license plate number, which O'Rourke determined was registered to defendant at an address in Brooklyn Center. The informant's previous tips had been reliable and had led to narcotics convictions.

O'Rourke and other officers conducted surveillance of defendant for approximately two weeks. They determined that defendant was living in north Minneapolis, and observed defendant make frequent stops at a known crack house in north Minneapolis. O'Rourke believed that the actions of defendant were consistent with drug trafficking. During this time, O'Rourke received another tip from the informant that defendant was dealing large amounts of cocaine.

On November 9, 2006, officers observed defendant leave his residence and drive the Tahoe to a convenience store. Defendant picked up a passenger at the convenience store, drove around the block, and then dropped the passenger off at the same convenience store. Although none of the officers observed what happened inside the Tahoe, O'Rourke testified that he believed this activity was consistent with drug

---

[2] The background section is derived primarily from the facts set forth in the Magistrate Judge's Report and Recommendation.

trafficking. Defendant returned briefly to his residence, and then continued to drive through north Minneapolis. Officers on the scene reported to O'Rourke that defendant randomly circled several blocks, drove through alleys, and changed directions several times. Based on these observations, O'Rourke believed defendant was attempting to evade surveillance, and ordered two officers in a marked squad car on the scene to stop the Tahoe and detain defendant. Defendant was then detained in the back of the squad car.

O'Rourke arrived on the scene and approached the squad car. He asked defendant if he knew why he had been detained, and defendant responded that he thought it was for non-payment of child support. O'Rourke then asked defendant whether he had any contraband in the Tahoe. Defendant denied having contraband in the Tahoe and invited O'Rourke to "go ahead and look." (Tr. at 18.) O'Rourke asked defendant to confirm that he could search the vehicle, and defendant responded that it was "fine to look." (*Id.*) O'Rourke approached the vehicle, looked through the driver's side window, and observed a plastic bag tucked under the driver's seat, as well as sandwich baggies containing a substance that appeared to be cocaine. O'Rourke also smelled an ammonia-like odor that he associated with the smell of cocaine. O'Rourke walked back to the squad car and told defendant that he was under arrest. Defendant immediately responded that the contraband did not belong to him.

Defendant was then transported to the stationhouse and questioned by O'Rourke. O'Rourke asked defendant to verify the location of his residence and to list the occupants of the residence for purposes of writing a search warrant for the address. Defendant responded that his wife and their baby were at the residence, and that "it was fine because

she knew we were coming." (Tr. at 22.)  O'Rourke asked defendant how his wife knew that the officers were coming to the residence, and defendant responded that he was on the phone with her when he was stopped by the officers.  Based on his past experience, O'Rourke believed that evidence at the residence would be destroyed.  He contacted other officers and directed them to "freeze" the residence by entering the house and securing the occupants of the house.  Within five to ten minutes, officers arrived at the residence, used a ram to force entry, and conducted a protective sweep of the house, detaining an adult and a child occupant.  The officers found in plain view evidence of illegal drugs.

Three hours later, another officer obtained a search warrant for defendant's residence.  The officer searched the residence and recovered incriminating evidence including bags suspected to contain cocaine.

## ANALYSIS

### I.   VEHICULAR STOP

Defendant first argues that the officers lacked probable cause or reasonable suspicion to support their initial stop of defendant.  According to defendant, the informant's tips and the officers' surveillance of suspicious conduct took place days before the defendant's vehicle was stopped.  Thus, defendant argues, even if the informant's tip and the officers' subsequent surveillance of defendant provided probable cause prior to November 9, 2006, any such probable cause had become stale by the time officers stopped defendant on November 9.

The Fourth Amendment prohibits an officer from making an arrest without a warrant unless that officer has probable cause to do so. *United States v. Adams*, 346 F.3d 1165, 1169 (8th Cir. 2003). To determine the existence of probable cause, the Court looks to the totality of the circumstances as set forth in the information available to the officers at the time of the arrest. *United States v. Kelly*, 329 F.3d 624, 628 (8th Cir. 2003); *Illinois v. Gates*, 462 U.S. 213, 230-39 (1983). Probable cause exists where a person of reasonable caution believes that an offense was being or had been committed by the person to be arrested. *Kelly*, 329 F.3d at 628. Information provided by a reliable informant may be sufficient to establish probable cause. *United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995).

The Court agrees with the Magistrate Judge's determination that the officers had probable cause to arrest defendant on November 9, 2006. The informant in this case had a proven track record of supplying reliable information. As such, the informant's two tips gave the officers probable cause to believe the informant was dealing cocaine from his vehicle. *See Gates*, 462 U.S. at 233-34 (stating that an informant's "unusual reliability" is sufficient to establish probable cause). The officers' surveillance of defendant over the next several days provided independent corroboration of the informant's tips and bolstered the officers' probable cause to believe defendant was engaged in drug trafficking. *United States v. Morales*, 923 F.2d 621, 625 (8th Cir. 1991) (noting that the presence of probable cause does not depend exclusively on the verification of illegal or illicit activity). Even if defendant did not visit the known crack

house on the day of the vehicular stop, defendant's driving conduct at the convenience store on that day was consistent with drug trafficking.[3]  As such, the officers' probable cause had not become stale at the time of defendant's arrest.  In light of the informant's tips and the officers' subsequent observations, the Court finds that the officers could reasonably have believed that defendant was committing or had committed an offense.  Because the officers had probable cause to arrest defendant, their stop of defendant's vehicle is justified.  *See United States v. Pratt*, 355 F.3d 1119, 1122-23 (8th Cir. 2004).  For these reasons, defendant's motion to suppress on this basis is denied.

## II.   SUFFICIENCY OF THE SEARCH WARRANT

The Fourth Amendment requires a showing of probable cause before a search warrant may be issued.  U.S. Const. amend. IV.  The issuing magistrate must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates*, 462 U.S. at 238.  Defendant argues that the search warrant application was insufficient to provide a detached and neutral magistrate with probable cause to issue the warrant.  The warrant application contained information related to the officers' initial warrantless entry and search of the home, including allegations of contraband found in plain view.  The Magistrate Judge determined that the officers' warrantless entry was not supported by exigent circumstances, but that the

---

[3] Defendant disputes that he drove erratically in an attempt to evade surveillance by the officers.  Even so, the Court finds that the officers had probable cause to arrest defendant.

warrant application nonetheless provided probable cause even without the allegations that resulted from the warrantless entry.[4]

The Court agrees that the warrant application would have supplied the issuing magistrate judge with probable cause to believe that contraband would be found in defendant's home. The accompanying affidavit stated that the officers had received tips from a reliable informant that defendant was dealing and transporting drugs from his vehicle, and that the informant had seen drugs inside defendant's residence within 72 hours of the warrant application. The affidavit further noted the officers' surveillance of defendant and corroboration of the informant's tips. As such, the Court finds that the search warrant was supported by probable cause even without the allegations that resulted from the initial warrantless entry.

Defendant further argues that the supporting search warrant affidavit contained material misstatements of fact regarding the stop and search of defendant's vehicle. Where a finding of probable cause is premised on an affidavit containing false or omitted statements, the resulting search warrant may be invalid if the defendant can prove by a preponderance of evidence "(1) that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading . . . and (2) that the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007) (internal quotations omitted). Defendant requests a *Franks* hearing to make

---

[4] The Magistrate Judge further determined that the evidence obtained during the initial warrantless entry did not need to be suppressed because it was ultimately seized pursuant to a valid search warrant.

such a showing. Under *Franks v. Delaware*, a defendant must make a substantial preliminary showing that includes "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." 438 U.S. 154, 171-72 (1978). Even where such a showing is made, however, no *Franks* hearing is required if there remains sufficient content in the warrant affidavit to support a finding of probable cause. *Id.*

The Court finds that defendant has made no preliminary showing of deliberate falsehood or reckless disregard for the truth on the part of the affiant. Further, as noted above, the issuing magistrate had probable cause to issue the search warrant even in the absence of allegations related to the stop and search of defendant's vehicle. For these reasons, the Court finds that the search warrant was adequately supported by probable cause. Defendant's motion to suppress evidence on this basis is therefore denied.

Finally, the prosecution argues that the Magistrate Judge improperly determined that the warrantless entry into defendant's home was not supported by exigent circumstances. Officers may not enter or search a home without a warrant unless justified by exigent circumstances. *Payton v. New York*, 445 U.S. 573, 589 (1980). This exception allows immediate police action without a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed. *United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996). The prosecution argues that the officer reasonably believed that the defendant's wife would destroy the contraband because the defendant had spoken with his wife after being stopped and had told her that the police were on their way. However, as discussed by the Magistrate Judge, there was no evidence suggesting that the defendant's wife was involved in the drug trafficking or that she

would destroy the evidence in question. O'Rourke did not inquire as to the subject of defendant's communication with his wife during the interrogation. Further, although O'Rourke testified that narcotics traffickers themselves often dispose of drugs if they know the police are coming, his testimony did not suggest a basis for concluding that a defendant's spouse or family members would similarly destroy evidence. In short, the Court agrees with the Magistrate Judge that the officers' warrantless entry into defendant's home was not justified by exigent circumstances.[5]

### III.   OUTRAGEOUS GOVERNMENTAL CONDUCT

Defendant argues that the case should be dismissed because the prosecution's conduct violates the Due Process Clause. The government may be barred from invoking the judicial process to obtain a prosecution where its conduct is so outrageous that it violates due process. *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003). However, the "level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993). Defendant argues that law enforcement in this case procured an informant by promising leniency in criminal proceedings against that informant. The Court finds that this conduct is not so outrageous as to "shock the conscience." The Court therefore denies defendant's motion to dismiss on this basis.

---

[5] Nonetheless, the Court finds that evidence seized pursuant to the officers' initial warrantless entry need not be suppressed. Under the independent source doctrine, "evidence initially discovered during an unlawful search, but later obtained independently through activities untainted by the illegality, may be admitted into evidence." *United States v. Khabeer*, 410 F.3d 477, 483 (8th Cir. 2005). As discussed above, the evidence in question was ultimately seized pursuant to a valid search warrant untainted by the illegality of the initial warrantless entry.

# ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** defendant's objections [Docket No. 78] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 75].  Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 14] is **DENIED**.

2. Defendant's Motion to Suppress Evidence [Docket No. 54] is **DENIED**.

3. Defendant's Motion to Dismiss for Outrageous Governmental Conduct [Docket No. 53] is **DENIED**.

4. Defendant's Motion to Dismiss Indictment Because of Selective Prosecution [Docket No. 49] is **DENIED**.

5. Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 13] is **DENIED**.

6. Defendant's other dispositive motions [Docket Nos. 34, 48, 58] are **WITHDRAWN**.[6]

DATED:   May 21, 2007
at Minneapolis, Minnesota.

        s/ John R. Tunheim
        JOHN R. TUNHEIM
       United States District Judge

---

[6] Defendant's remaining dispositive motions sought to compel the government to confirm or deny any illegal electronic surveillance of defendant's communications.  Based on the government's denial of any illegal surveillance, defendant represented to the Magistrate Judge that there were no outstanding issues related to these motions.  On this basis, the Court agrees with the Magistrate Judge's recommendation that defendant's motions are withdrawn.